# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| PRESIDING ELDER PHILLIP RUSS, IV, REV. MARCIUS KING, by and through LYNETTE GLENN, Power of Attorney, and REV. MATTHEW EWING,<br><br>*Individually and On Behalf of All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>NEWPORT GROUP, INC., SYMETRA FINANCIAL CORPORATION, REV. DR. JEROME V. HARRIS, BISHOP SAMUEL L. GREEN, SR., AFRICAN METHODIST EPISCOPAL CHURCH, AND JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:22-cv-00375<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Presiding Elder Phillip Russ, IV, Rev. Marcius King, by and through Lynette Glenn, Power of Attorney, and Rev. Matthew Ewing, individually and on behalf of all others similarly situated, bring this First Amended Class Action Complaint against Defendants Newport Group, Inc., Symetra Financial Corporation, Rev. Dr. Jerome V. Harris, Bishop Samuel L. Green, Sr., and African Methodist Episcopal Church, a not-for-profit 501(c)(3) corporation ("AMEC"), and alleges the following:

**INTRODUCTION**

1. This suit arises out of the breaches of fiduciary duties and negligent conduct of the Defendants in managing the AMEC Pension Fund ("Fund") and retirement assets of the below-defined Class. This class action seeks recovery on behalf of AMEC ministers and other employees who, collectively, have lost tens of millions of dollars in career retirement savings due to Defendants' misconduct and mismanagement of the Fund.

2. Plaintiffs and the members of the class (collectively, "Plaintiffs") are ministers, bishops, officers, elders, and other employees of AMEC or AMEC-related educational institutions or programs who have lost retirement funds that were invested in the Fund.

3. Pursuant to the terms of the Plaintiffs' employment, AMEC paid a percentage of the Plaintiffs' income to the Fund. Additionally, many Plaintiffs chose to invest an additional specified portion of their income into the Fund.

4. As detailed below, Defendants directly owed duties to Plaintiffs, including fiduciary duties, to conduct due diligence, monitor investments, and oversee and audit the Fund and its trustee(s) or managers, in order to assure that that the Fund was protected and that Plaintiffs had access to their retirement funds when it came time for appropriate payments or withdrawals. At all times relevant, the Defendants had the power to monitor, review, dismiss, appoint, and control the operations of various trustee(s) whose responsibility it was to act in the best interests

of the Plaintiffs.

5. Defendants oversaw and controlled the investments in the Fund and did not adequately monitor or oversee the Fund. The Defendants in this action are each responsible for Plaintiffs' massive losses.

6. The loss to Plaintiffs' assets is a direct and proximate result of Defendants' failure to fulfill their duties to Plaintiffs.

## PARTIES

7. Plaintiff Presiding Elder Russ is a citizen and resident of Santa Rosa, Florida in Santa Rosa County. Presiding Elder Russ served as an AMEC minister for over 40 years and retired in September 2021. Shortly after his retirement, he sought to access monies due him from the Fund and was unable to.

8. Plaintiff Rev. Ewing is a citizen and resident of Cantonment, Florida in Escambia County. Rev. Ewing served as an AMEC minister for over 43 years and retired in September 2021.

9. Plaintiff Rev. King is a citizen and resident of Jacksonville, Florida in Duval County. Rev. King served as an AMEC minister since he was 16 years old until he retired in 2017 at 73. Rev. King has been unable to withdraw his funds from the AMEC retirement fund and his efforts to rollover the funds to an IRA were similarly unsuccessful.

10. Defendant Newport Group, Inc. is a Florida corporation with its headquarters in Walnut Creek, California.

11. Defendant Symetra Financial Corporation was incorporated, and is

existing, under the laws of the state of Delaware. It maintains its headquarters in Bellevue, Washington.

12. Defendant Rev. Dr. Jerome V. Harris is a citizen and resident of Memphis, Tennessee in Shelby County. He served as the Executive Director of the AMEC Department of Retirement Services until June 2021.

13. Defendant Bishop Samuel L. Green, Sr. is a citizen and resident of Columbia, South Carolina in Richland County. He served as the Chair of the AMEC Department of Retirement Services from 2016 until July 2021.

14. Defendant AMEC and specifically its Department of Retirement Services, which oversees the Fund, was incorporated, and is existing, under the laws of the state of Pennsylvania as a not-for-profit 501(c)(3) corporation. AMEC's principal place of business and its headquarters are in Nashville, Tennessee. The AMEC Department of Retirement Services maintains its principal place of business and headquarters in Memphis, Tennessee.

15. Defendants John Does 1-10 are affiliates or subsidiaries of Defendants here that may be responsible for the conduct alleged herein. Such parties are named in a "John Doe" capacity pending discovery in this case.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C 1331(d). The amount in controversy exceeds $5,000,000 and there are members of the proposed Class who are citizens of a State different from the State of citizenship of Defendants.

17. This Court may exercise personal jurisdiction over Defendants because Defendants conduct substantial business in this State, including conducting Fund business within the State of Florida, and have engaged in the unlawful practices described herein in this District.

18. Venue is proper in this District under 28 U.S.C. 1391(b) because (1) Defendants reside and are subject to the Court's personal jurisdiction in this District and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### I. History of the AMEC

19. The African Method Episcopal ("AME") denomination grew out of the Free African Society, which was established in Philadelphia in 1787.

20. The first member church of AMEC was dedicated in Bethel in 1794, and Richard Allen (a founding member of the Free African Society) was made pastor.

21. Allen successfully sued in the Pennsylvania courts in 1807 and 1815 for the right of his congregation to exist as an independent institution.

22. In light of the fact that other Black Methodists in middle Atlantic communities also encountered racism and desired religious autonomy, they met in Philadelphia to form a new Wesleyan denomination, the AME.

23. Prior to the Civil War, the geographical spread of the AMEC was mostly in the Northeast and Midwest, with major congregations established in Philadelphia, New York, Boston, Pittsburgh, Baltimore, Washington, DC,

5

Cincinnati, Chicago, Detroit, and other large Blacksmith's Shop cities.

24. The AMEC eventually reached the Pacific Coast in the early 1950's with churches in various cities across California.

25. During the Civil War and Reconstruction, AMEC membership boomed as AME clergy moved into the states of the collapsing Confederacy. By 1880, membership reached 400,000 because of AMEC's rapid spread below the Mason-Dixon line.

26. Today, AMEC has membership in 20 Episcopal Districts in 39 countries on 5 continents. The work of the Church is administered by 21 active bishops and nine General Officers who manage departments of the Church.

## II.  AMEC Fund Allegations

27. Beginning in the mid-1960s, AMEC provided a pension plan for its eligible employees. The plan required AMEC's ministers, bishops, officers, elders, and other employees of AMEC or AMEC-related educational institutions or programs to enroll.

28. Upon information and belief, the Plan would be funded by a percentage of each eligible employee's annual income.

29. By the mid-1990s, the Plan was renamed the "African Methodist Episcopal Church Retirement Plan" (the "Plan").

30. The Plan was principally funded by two methods of contribution: 1) AMEC employer entities (or AMEC itself) would contribute a portion of eligible employees' income to the Fund on each individual employee's behalf; and 2) eligible

6

employees were permitted to contribute additional portions of their income to the Fund for their future retirement benefit.

31. The monies deposited into the Fund were managed by a trustee whose responsibility it was to ensure the Fund's assets were properly managed and protected for the benefit of the eligible employees whose earnings had funded the Plan.

32. Under Plan documents, upon information and belief, AMEC retained the ability to "appoint and remove the Trustee from time to time" when "necessary for the proper administration of the Plan to assure that the Plan [was] operated for the exclusive benefit of the [eligible employees] and their Beneficiaries."

33. After the initial creation of the Plan, upon information and belief, AMEC organized a separate retirement fund for ministers and church elders to be funded by AMEC directly.

34. Additionally, on or about January 1, 2003, AMEC created a 401(k) plan for eligible employees who wished to contribute to their retirement in this form of investment savings. To contribute, eligible employees reduced their earned compensation and directed their earnings to the 401(k) plan.

35. At some point in or around 2005, upon information and belief, AMEC consolidated the various governing documents of the Plan into one organized retirement investment plan document. The resultant retirement plan is believed to be currently named the "African Methodist Episcopal Church Ministerial Retirement Annuity Plan."

36.     It is believed that the Plan is inclusive of all salaried employees of AMEC.

### III.     Misappropriation and Mismanagement of the Plan

37.     Since approximately 2002, the person in charge of management of the Plan's assets was Defendant Rev. Dr. Jerome V. Harris. Defendant Harris was supervised by AMEC's Department of Retirement Services and its chair, Defendant Bishop Samuel L. Green, Sr.

38.     At all times relevant, Defendant Harris acted as Trustee of the Plan, making investment decisions and taking action with the blessing and authority of the directors of AMEC and the Plan.

39.     Throughout the early 2000s and until the Relevant Time Period, Defendant Harris would routinely publish written materials and presented at conferences on the condition of the Plan funds and its investments.

40.     While Defendant Harris's representations often attempted to reassure Plaintiffs that their funds were being invested in a conservative, protected manner, later audits and investigations revealed that AMEC (through Defendant Green and others, including without limitation Defendants Doe 1-10) had failed to properly oversee or manage the funds invested by Plaintiffs into the Plan.

41.     More specifically, later audits and subsequent communications revealed that of the approximately $120,000,000 in assets invested into the Plan (and/or which were purportedly held in conservative investment funds and portfolios), some $80,000,000 to $90,000,000 was unaccounted for by 2020 or 2021.

8

42. Details of imprudent, illogical, and risky investments of Plan assets followed, indicating that AMEC and the Plan management failed to adequately protect the interests of the Plaintiffs and their retirement savings. The backwards-looking audits and interest in investigating the safety of the Plaintiffs' retirement funds was too late.

43. Defendant Harris's and the AMEC and Plan directors' actions failed to reasonably or reliably protect the interest of the Plaintiffs in controlling their investments.

44. Upon information and belief, tens of millions of dollars of the Plaintiffs' retirement funds have been disastrously put into speculative and unsafe investments, to the harm of the entire group of Plaintiffs.

45. Defendant Harris was eventually removed from his position. The current Executive Director of the Department of Retirement Services is Rev. Dr. James F. Miller.

## SPECIFIC ALLEGATIONS

46. After all three Plaintiffs retired, they attempted to access their retirement funds from the Fund. They were, and have been, denied access to their money and have since learned that there may be nothing left.

47. The Fund was making disbursements until summer 2021. AME sent letters from the Fund dated September 14, 2021, notifying participants that disbursements would be temporarily paused while the Fund was audited due to a change in leadership.

48. The letter indicated that this audit would take 4-6 weeks.

49. In approximately the first week of November, the AME church sent a second letter indicating that the audit was not finished and therefore disbursements could not be made.

50. AMEC ministers, like Presiding Elder Russ and Revs. King and Ewing,, have wrongly been denied access to their retirement funds. Further, they are now being told by AMEC that their retirement funds may be as much as 80% lower than was represented in June 2021. Even the June 2021 statements likely concealed years of disastrous returns that were far below even conservative rates that should have been obtained by the Fund.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) seeking injunctive and monetary relief for Defendants' misconduct, as alleged herein.

### A. Class Definition

52. Plaintiffs bring this action on behalf of the following class:

Class:

All persons residing in the United States who are or were ministers or other employees of the AMEC and who have contributions in the Fund.

53. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses under Rule 23(c)(5), or modified in any other way.

54. Plaintiffs are members of the Class they seek to represent.

55. The misconduct challenged herein has been and is continuing in nature.

B. **Rule 23(a) and Rule 23(b)(3) Requirements**

   a. **Numerosity**

56. There are thousands of members of the proposed Class, who are geographically located throughout the United States.

57. The projected class size includes "about 5,000 participants, including ministers and bishops" who have contributions in the Fund.[1]

58. The precise number of class members is easily identifiable through AMEC's corporate records.

59. The number of Plaintiffs are so numerous that joinder of all members is impracticable.

60. The identification of Class members is ascertainable through Defendants' maintained records.

   b. **Commonality**

61. The prosecution of the claims herein will require the adjudication of numerous questions of law and fact common to the Class. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

---

[1] https://www.wsj.com/articles/ame-church-halts-retiree-payouts-amid-probe-into-missing-funds-1646913600

  a. Whether the Defendants breached their fiduciary duties to the ministers and other AMEC employees that participated in the AMEC's retirement plan;

  b. Whether the Defendants were negligent in failing to perform adequate due diligence in relation to the Fund;

  c. Whether and to what extent Plaintiffs were damaged by the Defendants' misconduct challenged herein;

  d. The appropriate measure of damages to which the Plaintiffs are entitled; and,

  e. Whether the Plaintiffs are entitled to accounting of the Fund.

### c. Typicality

62. All Class members were subject to the same misconduct as alleged herein, and their and injuries claims arise out of the same wrongdoing.

### d. Adequacy of Representation

63. Plaintiffs are adequate representatives of the Class.

64. Plaintiffs' interests are coextensive with those of the members of the proposed Class. Plaintiffs are willing and able to represent the proposed Class fairly and vigorously.

65. Plaintiffs have no interests antagonistic to, or in conflict with, the other Class members, and will fairly and adequately protect the interests of the Class.

66. Plaintiffs have retained counsel highly skilled in complex class litigation who are qualified, experienced, and able to conduct this litigation.

### e. Predominance & Superiority

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

69. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class.

70. AMEC has acted on grounds generally applicable to Plaintiffs and the proposed Class by maintaining a standardized practice of requiring a percentage of eligible employees' salaries to be invested into the Fund, and by now preventing them from withdrawing monies from the Fund.

71. AMEC has acted or refused to act on grounds generally applicable to Plaintiffs and the proposed Class.

### f. Injunctive Relief

72. Injunctive relief is also sought in this case. Entitlement to injunctive relief flows directly and automatically from Defendants' breach of their fiduciary duty. In turn, entitlement to injunctive relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Defendants' breaches of fiduciary duty and negligent conduct.

## CLAIMS FOR RELIEF

### COUNT I
### (BREACH OF FIDUCIARY DUTY)
### (On behalf of Plaintiff and Members of the Class)

73. Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1-72 as if fully set forth herein.

74. Plaintiffs bring this claim against all Defendants.

75. The Defendants had substantial discretion and control over the Plaintiff's and other Class members' retirement funds (including the investment of such funds) and communications with Plaintiff and other Class members.

76. This discretion and control gave rise to fiduciary duties of loyalty and care on the part of each Defendant to Plaintiff and other Class members.

77. The Defendants occupied a superior position over Plaintiffs and other Class members with respect to their management and control over Plaintiffs' and other Class members' retirement funds.

78. The Defendants' superior position necessitated that Plaintiffs and other Class members repose trust and confidence in the Defendants to fulfill their duties, and Plaintiffs and other Class members reposed such trust by investing in the Funds.

79. As managers and professional advisors of the Fund, Defendants owed fiduciary duties to the Plaintiffs and other Class members.

80. The Defendants breached their fiduciary duties to Plaintiffs and other Class members by failing to adequately manage the Fund and enable Plaintiffs and other Class members to withdraw monies therefrom.

81. Plaintiffs and other Class members have been damaged as a proximate result of Defendants' breaches of fiduciary duty and are entitled to damages, and appropriate equitable relief, including accounting.

## COUNT II
## (NEGLIGENCE)
## (On behalf of Plaintiff and Members of the Class)

82. Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1-72 as if fully set forth herein.

83. Plaintiffs bring this claim against all Defendants.

84. The Defendants had a special relationship with Plaintiffs and other Class members that gave rise to a duty to exercise due care in the management of their assets invested in the Fund.

85. The Defendants knew or should have known that Plaintiffs and other Class members were relying on the Defendants to manage the investments entrusted to the Fund with reasonable care, and Plaintiffs and other Class members did reasonably and foreseeably rely on the Defendants to exercise such care by entrusting assets to the Fund.

86. The Defendants failed to exercise due care and thereby injured Plaintiffs and other Class members.

87. The Defendants failed to exercise the degree of prudence, caution, and good business practice required of persons who obtain and manage retirement funds.

88. The Defendants also failed to perform adequate due diligence and monitoring with respect to the Fund and its investments.

89. If the Defendants had not been negligent, they would have discovered that Plaintiffs and other Class members had lost a substantial portion of their retirement funds.

90. As a proximate and foreseeable result of Defendants' negligence, Plaintiff and other Class members have been damaged.

91. By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiffs and other Class members.

## COUNT III
## (CONVERSION)
## (On behalf of Plaintiff and Members of the Class)

92. Plaintiffs realleges and incorporates by reference the allegations contained in paragraphs 1-72 as if fully set forth herein.

93. Plaintiffs bring this claim against all Defendants.

94. Plaintiffs and other Class members had an ownership and other possessory rights to their respective portions of the Fund based on the amounts they contributed to the Fund and rates of return that the Fund assured Plaintiffs and the Class members that they had and were enjoying.

95. Defendants converted a portion of the Funds that Plaintiffs and Class members had possessory rights to.

96. Plaintiffs and the other Class members have been damaged as a proximate and direct result of Defendants' conversion of Plaintiffs and other Class members' respective contributions to the Fund with reasonable rates of return that they would have otherwise enjoyed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray the Court for the following relief:

1. That the Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court name Plaintiffs as Class Representatives and their counsel as Class Counsel;

3. That the Court enter an order finding that Defendants' conduct was a breach of their fiduciary duties;

4. That the Court enter an order finding that that Defendants' conduct was negligent as alleged herein;

5. That the Court award Plaintiffs and the other Class members damages and injunctive relief as appropriate, including but not limited to an accounting;

6. That the Court award Plaintiffs and the other Class members pre-judgment and post-judgment interest;

7. That the Court award Plaintiffs and the other Class members reasonable attorneys' fees, costs, and expenses;

8. That all costs of this action be taxed against Defendants; and

9. That the Court award Plaintiffs and the Class such other and further relief as this Court may deem just and proper.

10. Plaintiffs demand a trial by jury.

11. Plaintiffs reserve the right to amend the Complaint.

Dated: April 19, 2022.   Respectfully Submitted,

    */s/Rachel Dapeer*
Rachel Dapeer
**DAPEER LAW**
20900 NE 30th Avenue, #417
Aventura, Florida 33180
Telephone: (305) 610-5223
Email: Rachel@dapeer.com

*Attorney for Plaintiffs*